Laramore, Judge,
delivered the opinion of the court:
This is an action for recovery of individual income taxes paid by plaintiff for the calendar years 1947,1948, and 1949, in the total amount of $2,052.83.
The question presented is whether plaintiff was domiciled in Belgium in the years in question and subject to the community property laws of that country.
Plaintiff contends he abandoned his Tennessee domicile on or about October 1,1946, and thereupon obtained a domicile in Belgium; that he was domiciled in that country during the period 1947 through 1949 and hence his income was *251 subject to that country’s community property laws which, vested one-half of his income in his wife.
The defendant denies that plaintiff was domiciled in Belgium during the years in question and refuses to refund any tax moneys claimed by plaintiff on the grounds alleged.
Domicile is a compound of fact and law. Traditional formula requires conjunction of physical presence and animus manendi in the new location to bring about a domiciliary change. Sweeney v. District of Columbia, 113 F. 2d 25.
Plaintiff, in his brief, concedes that he was domiciled in Tennessee until at least October 1, 1946, and further admits that the fact that he was transferred to Belgium under military orders did not per se cause a change of domicile.
The facts show that during plaintiff’s overseas military duty he spent time in England, France, Belgium, Holland, and Germany. At the time of his separation from active duty he obtained civilian employment in the Army and was stationed in Germany. When he was recalled to active duty in the Air Force, he was immediately transferred to England. Thus it can be seen that due to his Army and civilian service with the Army he was not in a position to make a choice as to place of abode, and it cannot be said that he was physically present in one place any more than another.
As to the element of intent to remain, the facts clearly show that plaintiff had no intention to remain in Belgium or even in Europe. He at all times remained a citizen of the United States and has remained in the military service since his recall to duty in 1949. Furthermore, plaintiff’s 1947 passport shows that he obtained a visa to enter and leave Belgium on several trips during the period December 8,1947, to January 24, 1948, and during the period April 30, 1948, to May 22,1949, but in all cases plaintiff was prohibited from establishing himself in Belgium or accepting employment therein.
Plaintiff voted in Tennessee in 1945; he at all times maintained an address in Tennessee; he filed his Federal income tax returns in Tennessee except for the year 1950 when he chose to file in Baltimore, Maryland; he used the Tennessee address to obtain a U. S. passport in 1947.
*252 Only once, in 1951, did plaintiff’s passport show a Belgium address and that was an emergency address. Significantly, in 1947 his passport showed an emergency address in Germany. There is no evidence that plaintiff ever maintained a home of his own in Belgium and the only reason for not living in Government quarters was because no quarters were available.
The Court of Appeals of Maryland stated the test to be applied as to establishment of domicile in the case of Thompson, Officer of Registration, et al. v. Warner, 34 Atl. 830, 831, as follows:
* * * But there must be an adoption of the new abode as a place of fixed present domicile; * * * One of the marked evidences of residence is that the person claiming it identifies himself and all his interests with his new place of abode, and exercises the right and performs the duties of a citizen. * * *
The Supreme Court in the case of Mitchell v. United States, 21 Wall. 350, 353, stated the rule as to circumstances establishing the animus manendi as follows:
When the claimant left Louisville it would have been illegal to take up his abode in the territory whither he was going. Such a purpose is not to be presumed. The presumption is the other way. To be established it must be proved. Among the circumstances usually relied upon to establish the animus manendi are: Declarations of the, party; the exercise of political rights; the payment of personal taxes; a house of residence, and a place of business. All these indicia are wanting in the case of the claimant.
All these indicia are wanting in the case at bar. Based on the facts as found by the commissioner of this court and the authorities applicable thereto, plaintiff has failed to show that he was domiciled in Belgium in 1947, 1948, and 1949, and therefore is not entitled to claim the benefits of the community property law of that country in arriving at his taxable income for those years.
Plaintiff’s petition is dismissed.
Madden-, Judge; Whitakee, Judge; Littleton, Judge; and Jones, Chief Judge, concur.
*253 FINDINGS OF FACT
The court, having considered the evidence, the report of Commissioner Bichard H. Akers, and the briefs and argument of counsel, makes findings of fact as follows:
1. The plaintiff, a citizen of the United States, was born in Tracy City, Tennessee, August 14, 1905. He was married in 1928 and lived with his wife (hereinafter sometimes referred to as his “first wife”) in Tennessee where he was engaged in the practice of law until he was inducted into the Army of the United States on August 8,1942. At the time of his induction into the military service, he owned both real and personal property which were located in Tennessee, including a three-apartment unit and a piece of income property known as a restaurant or night club.
2. About two weeks after his induction into the Army in August 1942 as a private, the plaintiff was first ordered to Atlantic City, New Jersey, where he remained approximately three months, then to Florida. While in Florida, he was honorably discharged from the Army of the United States on January 19,1943, in order to accept a commission and on January 20,1943, he was appointed a second lieutenant, Air Corps, Army of the United States. As will hereinafter appear, he remained on active duty as a commissioned officer from January 20,1943, until July 22,1947, when he resigned his commission. On March 18,1949, he was recalled to active duty with the United States Air Force and is still in that military status, his commission at the time of the trial in this proceeding being that of lieutenant colonel, United States Air Force.
3. Upon entering the military service, the plaintiff continued to own a home in Tennessee where his wife resided. While the plaintiff was in Florida, his wife came there to be with him but he did not buy a home in Florida nor did he dispose of his home in Tennessee, the latter being kept as a place in which his wife might live while he was in the service. Upon his being ordered overseas in May 1943, his wife returned to their home in Tennessee. The plaintiff’s mother died in 1944. Thereafter the plaintiff had no close relatives *254 left in Tennessee other than his first wife. He had no children by his first wife.
4. The plaintiff was ordered to overseas military duty in May 1943, at which time he was transferred to England, where he arrived in May 1943 and remained until July 1944, when he was sent to France. He remained in France until July 1945. Thereafter, on military orders, the plaintiff was officially stationed at St. Hubert, Belgium, from July 1945 until September 1945; Neufchateau, Belgium, from September 1945 until February 1, 1946; Charlesroi, Belgium, from February 1,1946, until July 1,1946; Brussels, Belgium, from July 1, 1946, until February 1, 1947; Breda, Holland, from February 1,1947, until March 1,1947; Frankfort, Germany, from March 1, 1947, until separation from active duty on July 22, 1947. At these stations and in his subsequent civilian capacity the plaintiff was engaged in settling claims against the United States.
5. Upon separation from active duty on July 22,1947, the plaintiff was employed as a civilian, grade P-6, in the Army and was stationed at Frankfort, Germany, from that date until April 1948. From April 1948 until March 1949, he was stationed at Heidelberg, Germany, in the same position. On March 18, 1949, he was recalled to active duty in the Air Force and was immediately transferred to England.
6. While on military duty in Brussels, Belgium, from July 1, 1946, until February 1, 1947, there were no government quarters available at that place and the plaintiff obtained his own living quarters, for which he was reimbursed on an estimated cost-of-living basis.
7. On September 27,1946, the plaintiff’s first wife obtained a divorce from him in the courts of Davidson County, Tennessee. Pursuant to the separation agreement which was incorporated in the divorce decree of the Tennessee court, the plaintiff transferred to his first wife all his right, title, and interest to his house and business property and all other tangible assets which he held in Tennessee. Subsequent to that divorce in 1946, the plaintiff had no interest in any property in Tennessee.
'8. On October 17, 1946, the plaintiff married Josée Lambert, a Belgian national, who at that time was a resident *255 of Belgium and whose parents resided at Neufchateau, Belgium. The plaintiff and his wife did not sign an agreement to make the system of community property recognized in Belgium inapplicable to their marriage. Upon that marriage, the plaintiff rented a larger apartment in the same apartment house in Brussels in which he had been living prior to his marriage, and lived there with his second wife until about the first of February 1947 when, as heretofore shown, he was transferred under military orders first to Breda, Holland, where he remained until March 1, 1947, then to Frankfort, Germany, where he remained until April 1948.
9. Upon reporting for duty in Breda, Holland, the plaintiff rented a house where he and his wife lived until the latter part of May 1947. In the meantime, the plaintiff’s post of duty was changed to Frankfort, Germany, on March 1,1947, and on April 28, 1947, the wife gave birth to a baby. The latter part of May the wife and baby went to live with her parents in Neufchateau, and the plaintiff continued on his military assignment at Frankfort, Germany. About July 1, 1947, the plaintiff moved his family to Frankfort, Germany, where they remained until April 1948 when he was transferred to Heidelberg, Germany. His wife and baby lived with him during the period he was on duty in Heidelberg until March 1949, when he was recalled to active duty with the United States Air Force and ordered to duty in England. As a civilian employee in both Frankfort and Heidelberg, the plaintiff paid for living quarters for himself and family in those places. The plaintiff’s reason for transferring from a military to a civilian status in 1947 was that at that time personnel of the armed forces was being-returned to the United States and the plaintiff did not desire to leave continental Europe.
10. During the period 1947 to 1949, inclusive, while the plaintiff was living with his wife and family in Frankfort and Heidelberg, as heretofore indicated, the plaintiff’s wife and baby spent from two to three months each year with her parents in Neufchateau, Belgium, including holidays, the period of the plaintiff’s leave, and other similar occasions when the plaintiff would be at that place with his wife and *256 baby. During that period there was always a room available in the home of the wife’s parents for occupancy by the plaintiff and his family when they came to visit. At all times during that period, the plaintiff and his wife kept some personal property in this home of his wife’s parents consisting largely of items of clothing and some few items of small furniture which they had received as gifts.
11. The plaintiff voted by absentee ballot in Tennessee in 1944 but did not vote by absentee ballot or otherwise in Tennessee or in any other state in 1948 or 1952 because he did not consider himself eligible to vote in those years. At no time did the plaintiff ever vote or otherwise participate as a Belgian national. He has at all times remained a citizen of the United States and has remained in the military service since he was recalled to active duty in 1949. He and his wife and child are now located in the United States where the plaintiff is on military duty. The wife and child have never been in Tennessee.
12. Upon his transfer from active military duty to a civilian status in 1947, a passport was issued to the plaintiff by the United States in which the plaintiff showed an address in the United States at the Third National Bank, Nashville, Tennessee, and an emergency or foreign address at the place where he was living in Frankfort, Germany. The same United States address was given in a passport issued to him in 1951 but the emergency address given was at the home of his father-in-law at Neufchateau, Belgium. The foregoing address in Tennessee was at the bank where the plaintiff had a bank account when he entered the military service and which he continued until the time of his divorce. Under an arrangement with the bank he continued to use this address after the divorce as a convenient mailing address in the United States where he might receive business and official communications. The address in Belgium was given as the place where persons interested in his personal welfare, including sickness or death, could direct communications and inquiries. The same Tennessee address was given in his application in September 1947 for appointment as a reserve officer.
*257 The above 1947 passport shows that the plaintiff obtained a visa to enter and leave Belgium on several trips during the period December 8,1947, to January 24,1948, and during the period April 30, 1948, to May 22, 1949, but in all cases the plaintiff was prohibited from establishing himself in Belgium or accepting employment therein.
The plaintiff’s wife still considers herself a Belgian national and has at all times traveled on a Belgian passport.
13. The main source of Belgian private law is the Code Civil, which was promulgated in France in the official version of September 3, 1807, as the Code Napoleon. Belgium had come under French domination in 1794. After the separation of Belgium from France in 1814, the Napoleonic Code was retained in force in Belgium. The French law has thus become an organic part of the Belgian legal system and whenever the reference in the Code is to France it should be read as Belgium instead. Under that legal system, Belgium recognized the system of community property. Exhibit I attached to a stipulation filed in this proceeding contains English translations of certain articles of the Belgian Civil Code dealing with domicile and community property as well as excerpts from two court decisions on the same subject, and it is incorporated herein by reference.
14. On June 15, 1948, the plaintiff filed with the collector of internal revenue, Nashville, Tennessee, his individual income tax return for the year 1947, reporting thereon gross income of $5,122.25, standard deduction of $500, and a net income of $4,622.25, from which a personal exemption of $1,500 for three persons was claimed and allowed. The tax liability of $614.55 (including as a part thereof interest of $5.55) shown to be due on that return, was paid by the plaintiff in installments on the dates and in the amounts as follows:
June 15, 1948_$153. 64
August 20, 1948_ 153.64
October 19, 1948_ 276.39
March 14, 1949_ [1]30. 88
15.On June 15,1949, the plaintiff filed with the collector of internal revenue, Nashville, Tennessee, a claim for refund *258 for the year 1947 in the amount of $461.55, which assigned the following basis therefor:
Marriage 17 Oct., 1946 to Belgian National at Antwerp. Wife as non-resident alien cannot join in return or file individual return. Under community property law, wife is entitled to % income. Was resident in Germany at time of return but did not live in German economy. [Residence similar to military post except monthly rent paid for quarters. [Residence since marriage: Belgium, Oct. : 46-Jan. ’47; Holland, Jan. ’47-June ’47; Luxemburg, June ’47-Aug. ’47; Aug. ’47-Jan. ’48, Germany. Am advised each of said countries recognizes principle of community property. Residence in countries other than Germany was in local economy— not on military post or Gov. quarters.
Last _ residence in Z1 — Florida, Oct. ’42-May ’43. Maintain mailing address at Third National Bank, Nashville, Tenn. and made returns to collector there but own no property in Z1 nor do I maintain a residence of any description anywhere in the U. S.
The Commissioner of Internal Revenue (hereinafter sometimes referred to as the “Commissioner”) has not taken final action on that claim.
16. On March 10,1949, the plaintiff filed with the collector of internal revenue, Nashville, Tennessee, his individual income tax return for the year 1948, reporting thereon gross income of $9,138.36, deduction of $913.84, and net income of $8,224.52, from which a personal exemption of $1,800 for three persons was claimed and allowed. The tax liability shown to be due thereon was $1,289.87. Of that amount, $1,163.60 was collected by withholding, and the balance, $126.27, was paid on March 10,1949.
17. On May 16, 1949, the plaintiff filed with the collector of internal revenue, Nashville, Tennessee, a claim for refund for the year 1948 in the amount of $896.87, which assigned a basis therefor similar to that for 1947. On March 12,1951, the plaintiff filed with the collector of internal revenue at Baltimore, Maryland, another claim for refund for the year 1948 in the amount of $123.25, which likewise assigned a similar basis therefor. By letter dated April 17, 1951, addressed to the plaintiff in care of Third National Bank at Nashville, Tennessee, the plaintiff was advised of the deter- *259 ruination of a deficiency in income tax for the year 1948 in the amount of $108.26. Since the plaintiff had filed a waiver of restrictions on assessment and collection of a deficiency in tax, the deficiency with interest thereon of $13.51 was assessed on May 3, 1951, which had been paid, together with further additional interest of $1.48, on March 12,1951. The Commissioner has not taken final action on the claims for refund for the year 1948.
18. Under date of March 13, 1950, the plaintiff prepared his individual income tax return for the year 1949 and forwarded it to the collector of internal revenue at Baltimore, Maryland, reporting thereon income of $3,061.25 after splitting his income with his wife, Josee Lambert Byers. The tax liability reported thereon was $161 which was the amount of tax computed on the 1949 tax table for persons with incomes under $5,000, with three personal exemptions, as show», on page 4 of the return. He tore off pages 3 and 4 from the return filed as per the instructions printed at the top of page 4. He also reported that $639.80 was the amount of income tax withheld on his salary and, by reason thereof, claimed he was due a refund of $478.80.
19. Upon a preliminary audit in the collector’s office, the sum claimed of $478.80 was refunded to the plaintiff by check dated May 10,1950. Subsequently, the plaintiff was advised by a statutory notice dated January 12,1951, of the determination of a taxable income of $5,510.25 for the year 1949, upon which a tax of $663.10 was computed. The notice further stated that since the tax paid was $161 after the refund of $478.80, there was a deficiency of $502.10 for the year 1949. The plaintiff paid that deficiency, together with interest thereon totaling $69.66, by a payment of $300 on July 16, 1952, and $271.76 on July 17, 1952. On December 3, 1952, the plaintiff filed with the collector of internal revenue at Baltimore, Maryland, a claim for refund in the amount of $571.16 for the year 1949 on a basis similar to that for the preceding years. The Commissioner has not taken final action on that claim for refund.
The addresses given by the plaintiff on the claims for refund referred to above (except for the claim filed on December 3, 1952, where an address in Arlington, Virginia, was *260 given) and on bis income tax return for 1949 were at various places in England.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover, and his petition is therefore dismissed.

 Including interest of $5.55.