ESTATE OF Robert A. JACK, by Margo J. BLAIR, Executrix, Plaintiff,

v.

UNITED STATES, Defendant.

No. 01–410T.

United States Court of Federal Claims.

Nov. 27, 2002.

F. Michael Kovach, Bellevue, Washington, for the plaintiff.

Elizabeth D. Seward, Tax Division; Mildred L. Seidman, Chief, Court of Federal Claims Section; Eileen J. O'Connor, Assistant Attorney General, Department of Justice, Washington, D.C., for the defendant.

## OPINION

HORN, Judge.

The parties have filed cross-motions for partial summary judgment to determine whether a Canadian citizen employed in the United States on the date of his death, who was admitted to the United States under TC and TN nonimmigrant, temporary professional classifications,[1] was legally capable of forming an intent to be domiciled in the United States for federal estate tax purposes. The government argues that the holder of a TN Temporary Professional visa is legally capable of forming the intent to be domiciled in the United States for federal estate tax purposes. The plaintiff claims in her cross-motion for partial summary judgment that the intent to establish domicile by the holder of a TN Temporary Professional visa would be in direct violation of the terms of the visa, so that such an intent would be precluded. According to the plaintiff, "Dr. Jack's nonimmigrant visa establishes Dr. Jack's intent to depart, provides for his deportation should he fail to depart and, accordingly, precludes his forming an intent to remain indefinitely." At the parties' request, the question of whether Dr. Jack actually developed an intent to be domiciled in the United States is to be deferred until the legal question presented in the cross-motions for partial summary judgment is resolved.

## FINDINGS OF FACT

Dr. Robert A. Jack was born in Winnipeg, Canada on March 7, 1947, and died in Davis, California on August 27, 1996.[2] Until October, 1992, Dr. Jack resided and was domiciled in Canada, where he practiced veterinary medicine. In October, 1992, Dr. Jack was offered a two-year employment contract with the University of California in Davis, California, as Equine Medical Director in its School of Veterinary Medicine, for the period of January, 1993 through December, 1994. On November 2, 1992, Dr. Jack applied for admission to the United States as a TC class nonimmigrant and obtained TC Temporary Professional status, allowing him to be admitted to, and remain in, the United States for a period of one year. In December, 1992, Dr. Jack moved to Davis, California, under his TC Temporary Professional visa, and in January, 1993, commenced his duties as Equine Medical Director of the School of Veterinary Medicine.

According to the plaintiff, while living in California, Dr. Jack maintained bank accounts in Canada, continued affiliations with Canadian professional associations, remained a licensed Canadian veterinarian, maintained

---

1. In *Toll v. Moreno*, 458 U.S. 1, 102 S.Ct. 2977, 73 L.Ed.2d 563 (1982), the United States Supreme Court recognized two general classes of aliens, immigrant and nonimmigrant, with various sub-categories. *See Toll v. Moreno*, 458 U.S. at 13–14, 102 S.Ct. 2977; 8 U.S.C. § 1101(a)(15) (2000). For example, symbols such as "TN" (North American Free Trade Agreement (NAFTA) professional); "TD" (spouse or child of NAFTA professional); "A–1" (ambassador or public minister); "C–2" (alien in transit to United Nations headquarters); and "G–4" (international organization officer, employee, or immediate family) designate different types of nonimmigrant visa status, and are inserted in the space provided in the visa stamp. 22 C.F.R. § 41.12 (2002). The "TC" visa status was established for the temporary entry of certain types of Canadian profes-

sionals under the United States–Canada Free Trade Agreement, Pub.L. No. 100–449, 102 Stat. 1851 (1988). The TC status no longer exists, replaced by TN Temporary Professional status. *See* 8 C.F.R. § 214.6(*l*) (2002).

2. The preliminary joint stipulation of facts filed by the parties includes the following proviso: "This preliminary stipulation addresses the jurisdictional facts and facts material to Dr. Jack's status in the United States as a nonimmigrant temporary professional class TC and TN alien. Even if the Court were to decide that Dr. Jack could not form an intent to be domiciled in the United States as a matter of law, substantiation issues remain to be resolved."

his Canadian driver's license and voter registration, and also maintained a Canadian mailing address.

On or about December 13, 1993, Dr. Jack obtained an extension of his TC Temporary Professional visa through December 31, 1994. On or about December 2, 1994, Dr. Jack obtained TN Temporary Professional classification available under the newly-enacted NAFTA, enabling him to continue his employment in the United States. In January, 1995, Dr. Jack extended his contract with the University of California at Davis as Equine Medical Director in the School of Veterinary Medicine for two years, through December, 1996. Due to the January, 1995 contract extension, on or about May 25, 1996, Dr. Jack obtained an extension on his TN Temporary Professional visa through November 17, 1996. Approximately three months later, on August 27, 1996, Dr. Jack died in Davis, California, at the age of forty-nine.

Following his death, Dr. Jack's estate paid an estate tax of $15,415.00, as a non-resident not a citizen of the United States, based on the value of his gross estate in the United States, excluding assets outside the United States at the time of his death. The estate tax return was audited, and on May 24, 2000, a Notice of Deficiency was issued by the Internal Revenue Service (IRS) assessing an estate tax deficiency of $80,443.00. The deficiency was premised on a determination by the IRS that Dr. Jack was domiciled in the United States on the date of his death. The IRS wrote: "As it has been determined that the decedent was domiciled in the United States at the date of death, the reported value of the taxable estate is increased by the entire value of the gross estate outside the U.S. pursuant to Section 2031 of the Internal Revenue Code."

Therefore, according to the IRS, Dr. Jack's assets outside the United States at the time of his death were subject to the estate tax of the United States. The parties agree that Dr. Jack's Canadian assets are part of his gross estate for tax purposes only if he were domiciled in the United States at the time of his death and that such domicile requires that Dr. Jack intended to remain in the United States indefinitely at the time of his death.

On December 6, 2000, the IRS assessed plaintiff in the amount of $80,443.00 in additional estate taxes, plus $23,662.04 in interest. Additional interest of $377.96 and $1,044.49 was subsequently assessed. The Executrix of Dr. Jack's estate paid the alleged estate tax deficiency and statutory interest on July 6, 2000, and the additional assessed interest on February 27, 2001 and April 26, 2001. Subsequently, on August 6, 2000, the Executrix of Dr. Jack's estate filed an amended United States Estate Tax Return, Form 706–NA, which claimed a refund of estate taxes of $85,497.00.

The parties have filed cross-motions for partial summary judgment regarding whether an individual holding a TN Temporary Professional visa can legally form the intent to be domiciled in the United States, thus subjecting the individual's foreign property to the federal estate tax of the United States.

## DISCUSSION

The parties have filed cross-motions for partial summary judgment pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC). RCFC 56 is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) and is similar both in language and effect. Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); Fed.R.Civ.P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1323 (Fed.Cir.), reh'g denied and reh'g en banc denied (2001); Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d 1253, 1257 (Fed.Cir.2001); Avenal v. United States, 100 F.3d 933, 936 (Fed.Cir. 1996), reh'g denied (1997); Creppel v. United States, 41 F.3d 627, 630–31 (Fed.Cir.1994).

A fact is material if it will make a difference in the result of a case under the governing law. Irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247–48, 106 S.Ct. 2505; *see also Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d at 1257; *Curtis v. United States*, 144 Ct.Cl. 194, 199, 168 F.Supp. 213, 216 (1958), *cert. denied*, 361 U.S. 843, 80 S.Ct. 94, 4 L.Ed.2d 81 (1959), *reh'g denied*, 361 U.S. 941, 80 S.Ct. 375, 4 L.Ed.2d 361 (1960).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence and determine the truth of the case presented, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. 2505; *see, e.g., Ford Motor Co. v. United States*, 157 F.3d 849, 854 (Fed.Cir. 1998) (the nature of a summary judgment proceeding is such that the trial judge does not make findings of fact); *Johnson v. United States*, 49 Fed. Cl. 648, 651 (2001); *Becho, Inc. v. United States*, 47 Fed.Cl. 595, 599 (2000). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250–52, 106 S.Ct. 2505; *Jay v. Sec'y of Dep't of Health and Human Servs.*, 998 F.2d 979, 982 (Fed.Cir.), *reh'g denied and en banc suggestion declined* (1993). When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1553 n. 3 (Fed.Cir.1996). In such a case, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings. Summary judgment:

saves the expense and time of a full trial when it is unnecessary. When the material facts are adequately developed in the motion papers, a full trial is useless. "Useless" in this context means that more evidence than is already available in con-

nection with the motion for summary judgment could not reasonably be expected to change the result.

*Dehne v. United States*, 23 Cl.Ct. 606, 614–15 (1991) (citing *Pure Gold, Inc. v. Syntex, Inc.*, 739 F.2d 624, 626 (Fed.Cir.1984)), *vacated on other grounds*, 970 F.2d 890 (Fed.Cir.1992); *United States Steel Corp. v. Vasco Metals Corp.*, 55 C.C.P.A. 1141, 394 F.2d 1009, 1011 (C.C.P.A.1968).

Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505; *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 971 (Fed.Cir.2001), *cert. denied*, 534 U.S. 1109, 122 S.Ct. 913, 151 L.Ed.2d 879 (2002); *Gen. Elec. Co. v. Nintendo Co.*, 179 F.3d 1350, 1353 (Fed.Cir. 1999). In other words, if the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. at 587–88, 106 S.Ct. 1348; *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d at 1257; *Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1463 (Fed.Cir.), *reh'g denied and en banc suggestion declined* (1998).

The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Trilogy Communications, Inc. v. Times Fiber Communications, Inc.*, 109 F.3d 739, 741 (Fed.Cir.) (quoting *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575 (Fed.Cir.1994), *reh'g denied and en banc suggestion declined* (1995)), *reh'g denied and en banc suggestion declined* (1997); *Lockwood v. Am. Airlines, Inc.*, 107 F.3d

1565, 1569 (Fed.Cir.1997). If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that a genuine dispute regarding a material fact exists by presenting evidence which establishes the existence of an element essential to its case upon which it bears the burden of proof. *See Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. 2548; *Am. Airlines v. United States,* 204 F.3d 1103, 1108 (Fed. Cir.2000); *see also Schoell v. Regal Marine Indus., Inc.,* 247 F.3d 1202, 1207 (Fed.Cir. 2001).

Pursuant to RCFC 56, a motion for summary judgment may succeed whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. 2548. Generally, however, in order to prevail by demonstrating that a genuine issue for trial exists, the nonmoving party must go beyond the pleadings by use of evidence such as affidavits, depositions, answers to interrogatories and admissions. *Id.*

Even if both parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, however, the court is not relieved of its responsibility to determine the appropriateness of summary disposition in a particular case. *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir.1987)); *Chevron USA, Inc. v. Cayetano,* 224 F.3d 1030, 1037 n. 5 (9th Cir. 2000), *cert. denied,* 532 U.S. 942, 121 S.Ct. 1403, 149 L.Ed.2d 346 (2001). "[S]imply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other." *LewRon Television, Inc. v. D. H. Overmyer Leasing Co.,* 401 F.2d 689, 692 (4th Cir.1968), *cert. denied,* 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969); *see also B.F. Goodrich Co. v. U.S. Filter Corp.,* 245 F.3d 587, 593 (6th Cir.2001); *Massey v. Del Labs., Inc.,* 118 F.3d 1568, 1573 (Fed.Cir.1997). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment. The making of such inherently contradictory claims, however, does not establish that if one is rejected the other necessarily is justified. *B.F. Goodrich Co. v. U.S. Filter Corp.,* 245 F.3d at 593; *Atl. Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir.2000); *Allstate Ins. Co. v. Occidental Int'l., Inc.,* 140 F.3d 1, 2 (1st Cir.1998); *Reading & Bates Corp. v. United States,* 40 Fed.Cl. 737, 748 (1998). The court must evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party whose motion is under consideration. *DeMarini Sports, Inc. v. Worth, Inc.,* 239 F.3d 1314, 1322 (Fed.Cir. 2001); *Gart v. Logitech, Inc.,* 254 F.3d 1334, 1338–39 (Fed.Cir.2001), *cert. denied,* 534 U.S. 1114, 122 S.Ct. 921, 151 L.Ed.2d 886 (2002). After reviewing the parties' submissions, the court finds that there are no material facts in dispute.

The parties have stipulated that Dr. Jack held a TN Temporary Professional visa at the time of his death. Defendant claims that Dr. Jack developed the subjective intent to stay in the United States despite the fact that such an intent would have been in direct violation of his visa, and that, therefore, the IRS should be allowed to tax Dr. Jack's property holdings outside of the United States. *See* 26 U.S.C. §§ 2001(a), 2031(a), 2103 (1994). While the plaintiff's cross-motion for partial summary judgment raises the question of the legal capacity of Dr. Jack to establish domicile under his visa, defendant argues it should not be prevented from demonstrating that Dr. Jack either failed to reveal his true intent to stay in the United States indefinitely to the immigration officer who granted him his renewed TN Temporary Professional visa in 1996, or that he had developed the intent to stay in the United States in the intervening months between the renewal of his 1996 TN Temporary Professional visa and the time of his death.

Plaintiff argues that the basic terms of the doctor's TN Temporary Professional visa required him to retain his Canadian domicile and, therefore, prevented his ability to develop the requisite intent to stay in the United States, since the TN Temporary Professional visa specifically prevents such domiciliary intent. Although the plaintiff argues that the TN visa raises the presumption that Dr.

Jack's domicile has not changed from Canada, plaintiff does not address the issue of whether Dr. Jack could have been in the United States in violation of his visa.

Dr. Jack entered the United States in 1992 as a Canadian citizen with TC Temporary Professional status. After the implementation of the NAFTA, Dr. Jack's nonimmigrant status was converted from TC Temporary Professional to the TN Temporary Professional classification. 8 C.F.R. § 214.6(*l*). As implemented by Congress, the law provides that the United States, Canada and Mexico shall grant temporary entry to certain classes of business people seeking to "engage in business activities at a professional level ...." NAFTA Implementation Act, Pub.L. No. 103–182, 107 Stat.2057, Subtitle D, § 341(b)(2) (codified at 8 U.S.C. § 1184(e)(2) (2000)). Dr. Jack, as a veterinarian, qualified for a TN Temporary Professional pursuant to the NAFTA. 8 C.F.R. § 214.6(c). The NAFTA Implementation Act states:

> An alien who is a citizen of Canada or Mexico ... who seeks to enter the United States under and pursuant to the provisions of Section D of Annex 1603 of the NAFTA ... to engage in business activities at a professional level as provided for in such Annex, may be admitted for such purpose under regulations of the Attorney General .... For purposes of this Act, including the issuance of entry documents ... such alien shall be treated as if seeking classification, or classifiable, as a nonimmigrant ....

8 U.S.C. § 1184(e)(2).

Regulations promulgated by the Attorney General pursuant to the NAFTA Implementation Act state:

> Temporary entry, as defined in the NAFTA, means entry without the intent to establish permanent residence.[3] The alien must satisfy the inspecting immigration officer that the proposed stay is temporary. A temporary period has a reasonable, finite end that does not equate to permanent residence. In order to establish that the

alien's entry will be temporary, the alien must demonstrate to the satisfaction of the inspecting immigration officer that his or her work assignment in the United States will end at a predictable time and that he or she will depart upon completion of the assignment.

8 C.F.R. § 214.6(b). A Canadian citizen who qualifies for admission may be admitted for up to one year under the classification symbol TN. 8 C.F.R. § 214.6(f)(1). This status may be extended for additional one-year periods, and there is no limit on the number of extensions a Canadian citizen may obtain to remain in the United States on TN Temporary Professional visa status. *See* 8 C.F.R. § 214.6(h)(2)(i). As noted, however, the individual must not intend to remain in the United States permanently. *See* 8 C.F.R. § 214.6(b).

Dr. Jack's domiciliary intent is significant because section 2001(a) of the Internal Revenue Code of 1986(IRC) states that "[a] tax is hereby imposed on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States." 26 U.S.C. § 2001(a). IRS tax regulation 26 C.F.R. § 20.0–1(b)(1) (1994) defines "resident" as follows:

> A "resident" decedent is a decedent who, at the time of his death, had his domicile in the United States .... A person acquires a domicile in a place by living there, for even a brief period of time, with no definite present intention of later removing therefrom. Residence without the requisite intention to remain indefinitely will not suffice to constitute domicile ....

26 C.F.R. § 20.0–1(b)(1).

If a decedent satisfies the definition of resident as provided in 26 C.F.R. § 20.0–1(b)(1), "[t]he value of the gross estate [for estate tax purposes] of the decedent shall be ... the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated." 26 U.S.C. § 2031(a). If a decedent does not satisfy the IRC's residency requirements, the decedent's

---

**3.** The section following the first sentence in this definition was added to the C.F.R. in the 1999 edition.

estate is subject to the estate tax imposed on estates of "non-residents not a citizen." 26 U.S.C. § 2101 (1994). If deemed a "non-resident not a citizen" by the IRS, "the value of the gross estate . . . shall be that part of his gross estate . . . which at the time of his death is situated in the United States." 26 U.S.C. 2103.

The definition of "resident," as provided by 26 C.F.R. § 20.0–1(b)(1), requires the resolution of whether the decedent was domiciled in the United States at the time of his death. *See Estate of Jan Willem Nienhuys v. Comm'r*, 17 T.C. 1149, 1159, 1952 WL 211 (1952) (holding that "the amount of the estate tax on the estate of the decedent is dependent, in part, upon whether or not the decedent was domiciled in the United States at the date of his death."); *Estate of Anthony H.G. Fokker v. Comm'r*, 10 T.C. 1225, 1245, 1948 WL 241 (1948) ("If the estate is liable for tax, it is because Fokker died a resident of the United States. A resident of the United States, under the applicable regulations, is one who, at the time of his death, had his domicile in the United States.").

" 'Domicile' is . . . a concept widely used [and uncontroverted] in both federal and state courts for jurisdiction and conflict-of-laws purposes. . . . For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) (quoting *Texas v. Florida*, 306 U.S. 398, 424, 59 S.Ct. 563, 83 L.Ed. 817 (1939)).

The United States Supreme Court addressed the issue of establishing domicile in *Mitchell v. United States*, 21 Wall. 350, 88 U.S. 350, 22 L.Ed. 584 (1874), stating: "Domicile has been thus defined: 'A residence at a particular place accompanied with positive or presumptive proof of an intention to remain there for an unlimited time.' " *Mitchell v. United States*, 88 U.S. at 352 (citations omitted). The Supreme Court further clarified the establishment of legal domicile, stating:

A domicile once acquired is presumed to continue until it is shown to have been changed. Where a change of domicile is alleged the burden of proving it rests upon the person making the allegation. To constitute the new domicile two things are indispensable: First, residence in the new locality; and, second, the intention to remain there . . . . Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be the *animus* to change the prior domicile for another. Until the new one is acquired, the old one remains.

*Mitchell v. United States*, 88 U.S. at 353 (citation omitted, emphasis in original). In *Vlandis v. Kline*, the Supreme Court cited an opinion of the Attorney General of Connecticut for a reasonable standard for determining domicile:

In general, the domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning. This general statement, however, is difficult of application. Each individual case must be decided on its own particular facts. In reviewing a claim, relevant criteria include year-round residence, voter registration, place of filing tax returns, property ownership, driver's license, car registration, marital status, vacation employment, etc.

*Vlandis v. Kline*, 412 U.S. 441, 454, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) (quoting Opinion of the Attorney General of the State of Connecticut Regarding Non–Resident Tuition, Sept. 6, 1972 (unreported)); *District of Columbia v. Murphy*, 314 U.S. 441, 454, 62 S.Ct. 303, 86 L.Ed. 329 (1941) (holding that one can reside in one place, but be domiciled in another); *Texas v. Florida*, 306 U.S. 398, 425, 59 S.Ct. 563, 576, 83 L.Ed. 817 (1939) (Domicile is established by "the actual fact as to the place of residence and decedent's real attitude and intention with respect to it as disclosed by his entire course of conduct."); *Gilbert v. David*, 235 U.S. 561, 569, 35 S.Ct. 164, 59 L.Ed. 360 (1915) ("[C]hange of domicile is said to arise where there is a change of abode and 'the absence of any present intention to not reside permanently or indefinitely in the new abode,' " as opposed to entertaining a "floating intention" to return at some time in the future); *Byers v. United States*,

136 Ct.Cl. 250, 251, 141 F.Supp. 927, 928 (1956) ("Domicile is a compound of fact and law ... requir[ing] conjunction of physical presence and [the intention to remain] in the new location to bring about domiciliary change," and citing to the definition established by *Mitchell v. United States,* 88 U.S. at 353); *see also Perry v. Pogemiller,* 16 F.3d 138, 140 (7th Cir.1993) (holding that domicile is ordinarily understood to mean physical presence and the intent to remain somewhere indefinitely); *Anwo v. INS,* 607 F.2d 435, 437 (D.C.Cir.1979) ("[I]t is generally accepted that domicile is not established unless an individual intends to reside permanently or indefinitely in the new location.").

Defendant cites the United States Supreme Court's holdings in *Elkins v. Moreno,* 435 U.S. 647, 98 S.Ct. 1338, 55 L.Ed.2d 614 (1978) and *Toll v. Moreno,* 458 U.S. 1, 102 S.Ct. 2977, 73 L.Ed.2d 563 (1982), to suggest that aliens who are in the United States under a valid nonimmigrant visa can develop the subjective intent to remain in the United States indefinitely and, therefore, can legally establish domicile.[4] The Court in *Elkins v. Moreno* found that a certain class of temporary nonimmigrant aliens could establish domicile, but in doing so the Court looked closely at the intent of Congress when Congress established the particular visa classification. *See Elkins v. Moreno,* 435 U.S. at 664–665, 98 S.Ct. 1338. The Court determined that under the law, "were a G–4 alien to develop a subjective intent to stay indefinitely in the United States he would be able to do so without violating [the law or the regulations] or the terms of his visa ... [and he/she] would not necessarily be subject to deportation ... [or] have to leave and reenter the country in order to become an immigrant." *Id.* at 666–667. The Court found that Congress did not specifically limit the ability of G–4 visa holders to establish legal domicile. *Id.* at 664.

The defendant also cites the United States Supreme Court holding in *Toll v. Moreno,* as further proof that nonimmigrant visa holders can establish domicile. The Supreme Court in *Toll v. Moreno* stated that the visa status of a G–4 visa holder allowed for the establishment of domicile. 458 U.S. at 17, 102 S.Ct. 2977. The Court further noted, however, that "[f]or many ... nonimmigrant categories, Congress has precluded the covered alien from establishing domicile in the United States." *Id.* at 14, 102 S.Ct. 2977.

*Elkins v. Moreno* and *Toll v. Moreno* involved G–4 visas, not TN Temporary Professional visas. *See Elkins v. Moreno,* 435 U.S. at 652, 98 S.Ct. 1338; *Toll v. Moreno,* 458 U.S. at 3, 102 S.Ct. 2977. G–4 visa holders are admitted for an indefinite period, have acquired special privileges, and are not required to file yearly visa renewal applications for continuation of their visa. *See Elkins v. Moreno,* 435 U.S. at 666, 98 S.Ct. 1338; *Toll v. Moreno,* 458 U.S. at 14, 17, 102 S.Ct. 2977. Moreover, according to the Supreme Court, those admitted under a G–4 classification are permitted to establish domicile. *Id.* Neither *Elkins v. Moreno* nor *Toll v. Moreno* establish that any nonimmigrant visa holder, regardless of the type of visa classification held, can or cannot establish domicile, or address whether an individual with a visa which does not permit domicile might violate the terms of his/her visa and form domiciliary intent.

The Ninth Circuit in *Carlson v. Reed,* 249 F.3d 876, 877 (9th Cir.2001) addressed the issue of whether a TN/TD Temporary Professional visa holder can form the intent to establish domicile in the United States and also discussed *Elkins v. Moreno* and *Toll v. Moreno.* The issue before the Ninth Circuit was whether a person holding a TD visa[5] can "possess the legal capacity to 'establish domicile in the United States' under federal immigration law." *Id.* at 878. In deciding that the holder of such a visa did not have the

---

4. The visas at issue in *Elkins v. Moreno* and *Toll v. Moreno* were "G–4" visas. *See Elkins v. Moreno,* 435 U.S. at 651, 98 S.Ct. 1338; *Toll v. Moreno,* 458 U.S. at 3, 102 S.Ct. 2977. A G–4 designation is given to an officer or employee of an international organization or their immediate family. 22 C.F.R. § 41.12.

5. *See* 22 C.F.R. § 41.12. The "TD" visa symbol signifies "spouse or child of NAFTA Professional (TN)." TD and TN were often used interchangeably in *Carlson v. Reed,* 249 F.3d 876 (9th Cir. 2001).

098 capacity to establish domicile, the court looked at the congressional intent when Congress established the visa program under the NAFTA. *Id.* at 880. The Ninth Circuit determined that "admission into the United States for TN/TD nonimmigrant aliens is expressly conditioned on an intent not to establish permanent residence here. It is evident that Congress has 'precluded [TN/TD visa holders] from establishing domicile in the United States' under *Elkins* and *Toll.*" *Id.*[6]

The Supreme Court in *Elkins v. Moreno* and *Toll v. Moreno,* and the Ninth Circuit in *Carlson v. Reed,* looked at congressional intent when the respective visa programs were established. The Supreme Court also has indicated that "Congress has plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden." *Boutilier v. INS,* 387 U.S. 118, 123, 87 S.Ct. 1563, 18 L.Ed.2d 661 (1967). "[O]ver no conceivable subject is the legislative power of Congress more complete than it is over" the admission of aliens. *Oceanic Steam Navigation Co. v. Stranahan,* 214 U.S. 320, 339, 29 S.Ct. 671, 53 L.Ed. 1013 (1909).

Congress, when establishing the TN Temporary Professional visa program, clearly stated its intention that aliens seeking admission under the NAFTA as professionals should be classified as nonimmigrants. 8 U.S.C. § 1184(e)(2). Regulations promulgated pursuant to the NAFTA, while allowing Canadian citizens the opportunity to renew their TN visas, although requiring such renewal applications annually, also require the applicant to have the intent to remain in the country only temporarily. See 8 C.F.R. § 214.6(b).

Congress has established requirements for admission to the country under various immigration laws. "Any alien who was admitted as a nonimmigrant and who has failed to maintain the nonimmigrant status in which the alien was admitted ... is deportable." 8

U.S.C. § 1227(a)(1)(C)(i) (2000). The government retains the right to review the status of an alien to determine if the alien is in compliance with the terms of his visa. To prevent the defendant from attempting to prove that an individual alien is not in compliance with those laws would be equivalent to preventing the government from proving an individual had violated the terms of his or her visa. Indeed, courts have validated deportation of aliens for violating the terms of their visa. *See, e.g., Reid v. INS,* 420 U.S. 619, 624, 95 S.Ct. 1164, 43 L.Ed.2d 501 (1975) (holding that an alien who makes false statements about being a United States citizen at the time of his entry to the United States may be deported as one who "entered the United States without inspection."); *United States v. Tittjung,* 235 F.3d 330, 342 (7th Cir.2000), cert. denied, 533 U.S. 931, 121 S.Ct. 2554, 150 L.Ed.2d 721 (2001) (upholding a district court's decision that an individual can be deported because his position as a Nazi concentration camp guard invalidated his previously issued visa); *Mortazavi v. INS,* 719 F.2d 86, 87–88 (4th Cir.1983) (holding that the failure of a nonimmigrant student to attend school due to his suspension by the school constitutes grounds for deportation); *Wettasinghe v. INS,* 702 F.2d 641, 642 (6th Cir.1983) (holding that an alien was properly found deportable by the federal government when he entered the country on a nonimmigrant student visa and proceeded to start a business in direct violation of the terms of the visa).

The defendant asserts that it should be permitted to attempt to show that Dr. Jack was in the United States in violation of his TN Temporary Professional visa at the time of his death. "While Dr. Jack had to satisfy the immigration authorities that he did not intend to reside permanently in the United States in order to obtain the annual TC and TN classifications," the defendant states that it should not be prevented from "demonstrating that his intent changed, or was other than what he represented to the INS officers

---

**6.** Other courts have addressed the issue of whether certain classes of visa holders can legally establish domicile based on the terms of the visa. *See, e.g., Anwo v. INS,* 607 F.2d at 437, 438 (D.C.Cir.1979) (holding that because petitioner held a student visa, petitioner could not establish a lawful domicile since by holding a student visa, petitioner was asserting that he intended to reside in the United States temporarily).

who stamped his passport." Plaintiff alleges that there is a presumption that Dr. Jack's domicile remained in Canada and that the defendant should be precluded from arguing that Dr. Jack had the intent to establish domicile in the United States because such an intent was specifically precluded by the visa held by Dr. Jack.

Although in order to hold a TN Temporary Professional visa Dr. Jack should not have had the legal intent to establish domicile, the defendant has rebutted the plaintiff's allegation of a presumption that at the time of his death Dr. Jack intended to remain domiciled in Canada by virtue of holding a TN visa. In the Notice of Deficiency (which was followed by an IRS assessment based on the Notice of Deficiency) the IRS determined that "the decedent was domiciled in the United States on the date of death." "It is well established in the tax law that an assessment is entitled to a legal presumption of correctness—a presumption that can help the Government prove its case against a taxpayer in court." *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 122 S.Ct. 2117, 2122, 153 L.Ed.2d 280 (2002) (citations omitted). The presumption in favor of the defendant, based on the assessment, presumably made following proper inquiry by the government officials, outweighs the vague alleged presumption for which the plaintiff has cited no support. The government should be allowed an opportunity to prove, consistent with the notice of deficiency and the assessment, that Dr. Jack had developed the intent to domicile in the United States, even though in violation of the terms of his visa at the time of his death.

Whether Dr. Jack intended to make the United States his domicile is "mainly a question of fact turning on [decedent's] intent to remain indefinitely in [the United States] or a lack of intent to make his home elsewhere." *Carrasco–Favela v. INS*, 563 F.2d 1220, 1222 (5th Cir.1977) (citing *Mas v. Perry*, 489 F.2d 1396 (5th Cir.), *cert. denied*, 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974)). The United States Supreme Court, in *Texas v. Florida*, held:

> While one's statements may supply evidence of the intention requisite to establish domicile at a given place of residence, they cannot supply the fact of residence there; and they are of slight weight when they conflict with the fact. This is the more so where, as here, decedent's declarations are shown to have been inspired by the desire to establish a nominal residence for tax purposes, different from his actual residence in fact.

*Texas v. Florida*, 306 U.S. 398, 425 (1939) (citations omitted).

As stated by the United States Court of Appeals for the Third Circuit, "If [the decedent] complied with the terms of his temporary worker visa, then he could not have had the intent necessary to establish a domicile in this country. On the other hand, if he did plan to make the United States his domicile, then he violated the conditions of his visa and his intent was not lawful." *Graham v. INS*, 998 F.2d 194, 196 (3rd Cir.1993). The IRS has previously determined that an illegal alien can establish domicile in the United States, allowing the agency to tax all assets in the alien's estate, both inside and outside the United States, upon the alien's death. Rev. Rul. 80–209, 1980–2 C.B. 248, 1980 WL 130076 (1980).

The decedent may have developed the intent to be domiciled in the United States although that would have put him in violation of the terms of his visa. The defendant has raised enough of an issue regarding Dr. Jack's domiciliary status at the time of his death and should be allowed an opportunity to establish that Dr. Jack had formed the intent to be domiciled in the United States at the time of his death for the purposes of assessing estate taxes. Although never to be assumed, there are those individuals who violate the terms of their visas. The defendant should be allowed to offer proof regarding Dr. Jack's intent.

## CONCLUSION

The plaintiff's motion for partial summary judgment is **DENIED**. The defendant's motion for partial summary judgment is **GRANTED**.

**IT IS SO ORDERED.**