**TRILOGY COMMUNICATIONS, INC., Plaintiff–Appellant,**

v.

**TIMES FIBER COMMUNICATIONS, INC., and LPL Technologies, Inc., Defendants/Cross–Appellants.**

Nos. 96–1201, 96–1203.

United States Court of Appeals, Federal Circuit.

March 20, 1997.

Rehearing Denied; Suggestion for Rehearing In Banc Declined April 28, 1997.

George C. Summerfield, Jr., Pennie & Edmonds, Washington, D.C., argued, for plaintiff-appellant. Of counsel was H.T. Than.

Charles R. Wolfe, Jr., Bacon & Thomas, Alexandria, VA and John C. Henegan, Butler, Snow, O'Mara, Stevens & Cannada, PLLC, Jackson, MS, argued, for defendants/cross-appellants. With them on the brief was J. Cal Mayo, Jr., Attorney–At–Law, Oxford, MS.

Before PLAGER, LOURIE, and SCHALL, Circuit Judges.

LOURIE, Circuit Judge.

Trilogy Communications, Inc. appeals from the summary judgment of the United States District Court for the Southern District of Mississippi, *Trilogy Communications, Inc. v. Times Fiber Communications, Inc.*, No. J91–0542(W)(S) (S.D.Miss. Dec. 1, 1995), holding Trilogy's two U.S. patents, 3,567,846 and 3,693,250, not infringed by products manufactured and sold by Times Fiber Communications, Inc. and LPL Technologies, Inc. (collectively "Times Fiber"). Times Fiber cross-appeals from the district court's order denying its motion for summary judgment of patent invalidity and unenforceability on the ground of issue preclusion. *Trilogy Communications, Inc. v. Times Fiber Communications, Inc.*, No. 3:91–cv–542WS (S.D.Miss. Dec. 1, 1995). Because the court correctly construed the asserted claims and because the court did not abuse its discretion when it denied entry of an expert's report into evidence, we affirm. We dismiss the cross-appeal for lack of jurisdiction.

## BACKGROUND

Trilogy owns the '846 and '250 patents, which relate to coaxial cables. A coaxial cable typically has a solid metal inner conductor surrounded by a cylindrical insulating material. The insulating material is covered by a tubular metal outer conductor, known as a "sheath." The asserted claims of the '846 patent relate to a coaxial cable in which the insulating material, specifically a foam dielectric, is "fusion bonded" to the sheath.

Claim 1 of the '846 patent reads (with emphasis added) as follows:

An electrical cable including ... [a] foamed dielectric insulation ... the insulation being bonded to the core and being under some radial pressure between the core and the sheath, said insulation filling irregularities in the inside surface of the sheath and being *fusion-bonded* to the sheath.

Claim 6, the only other asserted claim of the '846 patent, depends from claim 1, and reads:

The electrical cable described in claim 1 characterized by the bond of the foam to the sheath including an outer layer of adhesion-promoting material that bonds the foam insulation to the inside surface of the sheath at a temperature lower than the fusion temperature of the foam.

The '250 patent relates to a method for manufacturing coaxial cables that involves "fusion-bonding" the foam insulation to the sheath. Trilogy asserted only independent claim 1 and dependent claim 8 of the '250 patent. Claim 1 reads (with emphasis added):

The method of making an electrical cable including ... *fusion-bonding* the insulation to the inside surface of the cable sheath by heating the sheath.

Times Fiber manufactures coaxial cables that contain a foam dielectric insulation bonded to the sheath with an adhesive. Trilogy sued Times Fiber, asserting that the '846 and '250 patents were infringed by Times Fiber's manufacture and sale of its T4Plus, T6, and TX coaxial cables. Times Fiber denied infringement and counterclaimed for a declaratory judgment that the patents in suit are invalid and unenforceable. It also brought related state-law counterclaims for unfair competition and illegal restraint of trade. On a motion for summary judgment, Times Fiber requested that the case be dismissed on the ground of collateral estoppel because the patents in suit had been found invalid and unenforceable during a prior litigation. The district court denied the motion, stating that the decision in that prior litigation had been vacated and thus had no legal effect. Times Fiber subsequently moved for summary judgment of non-infringement, arguing that the claim terms "fusion-bonded" and "fusion-bonding" do not read on its products. The district court construed these claim terms as requiring the foam dielectric insulation to melt onto the sheath. Because Trilogy conceded that the bond in the accused products is not formed by melting the foam, the court held as a matter of law that the accused products did not infringe the patents. Having resolved the infringement claim, the court certified the summary judgment of non-infringement as an appealable final judgment pursuant to Fed.R.Civ.P. 54(b). The court stayed further proceedings on Times Fiber's counterclaims, including its claim for a declaratory judgment of patent invalidity and unenforceability.

Trilogy appeals to this court, challenging the district court's claim construction and arguing that the district court abused its discretion by excluding extrinsic evidence submitted by Trilogy in support of its proffered claim construction. Times Fiber cross-appeals, arguing that the district court erred by failing to give the prior decision of invalidity and unenforceability collateral estoppel effect.

## DISCUSSION

We review a district court's grant of summary judgment *de novo*. *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994). Summary judgment is appropriate when no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Thus, summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Conroy*, 14 F.3d at 1575, 29 USPQ2d at 1377 ("The moving party ... may discharge its burden by showing the district court that there is an absence of evidence to support the nonmoving party's case."). In determining whether there is a genuine issue of material fact, we view the evidence in the light most favorable to the party opposing the motion, with

doubts resolved in favor of the opponent. *Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1274, 35 USPQ2d 1035, 1038 (Fed. Cir.1995).

### A. *Infringement*

■■■ Determining whether a patent claim has been infringed requires a two-step analysis: "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1576, 27 USPQ2d 1836, 1839 (Fed.Cir.1993). Claim construction is a question of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 983–84, 34 USPQ2d 1321, 1333 (Fed.Cir.1995) (in banc), *aff'd*, —— U.S. ——, 116 S.Ct. 1384, 134 L.Ed.2d 577, 38 USPQ2d 1461 (1996). In construing the claims, the court looks to the claim language, the specification, the prosecution history, and, if necessary, extrinsic evidence. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1576 (Fed.Cir.1996). Application of a properly construed claim to the accused device is a question of fact.

■■■ Trilogy argues that the district court erred in its interpretation of the claim terms "fusion-bonded" and "fusion-bonding." Relying on *The American Heritage Dictionary of the English Language* (1969), the district court stated that the term "fusion" ordinarily means "the act or procedure of liquefying or melting together by heat." Trilogy accepts this definition. However, Trilogy disputes the district court's further conclusion that the terms "fusion-bonded" and "fusion-bonding" as used in the claims necessarily require the foam insulation to melt. Trilogy argues that a fusion bond can also be formed by liquefying or melting a heat-activated adhesive placed between the foam and the sheath and that this fusion bond is also within the meaning of the claims as properly construed.

Trilogy contends that claim 6 of the '846 patent supports its interpretation. Claim 1 recites a cable with a foam insulation that is "fusion-bonded to the sheath." Claim 6, which incorporates all the limitations of claim 1, requires that the bond in claim 1 include

an adhesion-promoting material "that bonds ... at a temperature lower than the fusion temperature of the foam." Thus, Trilogy argues, claim 6 indicates that the fusion bond of claim 1 includes a bond that can be formed at a temperature below the fusion temperature of the foam. Trilogy concludes that the district court's claim construction, which requires the foam to melt, renders claim 6 meaningless.

Contrary to Trilogy's assertion, the district court's interpretation of "fusion-bonded" in claim 1 as requiring the melting of the foam is not inconsistent with use of an adhesion-promoting material in claim 6. Claim 6 depends from claim 1, which requires that the foam be fusion-bonded to the sheath. Claim 6 limits the bond of claim 1 to one that includes an adhesion-promoting material and also requires the adhesion-promoting material to bond at a temperature below the fusion temperature of the foam. However, claim 6 does not require the fusion bond of claim 1 to form below the fusion temperature of the foam. Rather, claim 6 merely requires that the adhesive form a bond below such a temperature. In other words, under the district court's claim construction, claim 6 requires the use of an adhesion-promoting material (that bonds below the fusion temperature of the foam) and further requires the formation of a fusion bond between the foam and the sheath as required by claim 1 (which necessarily occurs at or above the fusion temperature of the foam). Thus, claim 6 of the '846 patent does not compel Trilogy's interpretation of the meaning of claim 1.

Turning to the specification, Trilogy argues that the district court ignored relevant portions of the '846 and '250 specifications that support its proffered claim construction. Specifically, Trilogy argues that the following description demonstrates that a fusion bond can be formed by melting an adhesive below the fusion temperature of the foam:

> The foamed insulation can be bonded to the inside of the sheath at [a] lower temperature if an adhesion-promoting material is used....

> The advantage of using adhesion-promoting material is that it melts at a lower

temperature than that of the foamed insulation.

'846, col. 3, lines 61–74 and '250, col. 4, lines 37–52. Trilogy argues that because the adhesion-promoting material melts, it produces a fusion bond between the foam and the sheath. We disagree. Trilogy does not point to any text in the specification that would lead us to conclude that the use of an adhesion-promoting material results in *the foam insulation* "being fusion-bonded to the sheath." The specification describes two types of bonds: one formed by melting the foam so that it flows onto and bonds with the sheath and the other in which an adhesion-promoting material is used. The former bond is indisputably one in which the foam is fusion-bonded to the sheath. The latter bond, which uses an adhesion-promoting material, arguably may form a fusion bond between the adhesion-promoting material and the sheath and between the adhesion-promoting material and the foam. For example, other claims which were originally in the patent, but have since been disclaimed, claimed the use of an adhesion-promoting material that is "bonded to both the foam and the metal sheath." Claim 1, on the other hand, does not merely claim the use of a fusion bond, but requires that the foam be fusion-bonded to the sheath.

Any remaining doubt as to whether the use of an adhesion-promoting material alone can form the bond in claim 1 of the '846 patent is dispelled by examination of other limitations in that claim. Claim 1 requires that the "insulation [fill] irregularities in the inside surface of the sheath." Times Fiber argues that this limitation is irreconcilable with Trilogy's proposed claim construction. As explained in the specification of the '846 patent:

> The outer layer of the foam-insulated core, when melted by the application of heat to the metallic sheath, flows on to the inner side of the sheath and fills any irregularities in the sheath....

'846, col. 2, lines 3–6, and

> The permissible amount of melting depends upon how much the foam is compressed by the sheath. [Compression] causes the foam, when heated to a soften-

ing temperature and flowable condition, to flow as necessary to touch all portions of the inside surface of the sheath.

> If the sheath is not completely round, then the softened foam will accommodate itself to any lack of circularity. Where the inside surface of the sheath is not completely smooth, the softened foam, when under some compression, flows into the irregularities so as to have contact with the entire inside surface of the sheath.

'846, col. 3, lines 11–24.

Trilogy responds that the specification discloses that irregularities are filled by either melting or softening the foam. Trilogy thus asserts that the district court erred by interpreting claim 1 of the '846 patent as requiring melting, as opposed to mere softening in conjunction with an adhesive. We do not agree. As described in the patent specification and prosecution history, the terms "melting" and "softening" are synonymous. The patent uses the two terms interchangeably. No distinction is drawn between the temperature at which "softening" occurs and the temperature at which "melting" occurs. As the portion of the specification quoted above indicates, the key property of both melting and softening is that the foam enters a flowable condition, *i.e.*, that it melts.

The prosecution history further supports the district court's claim construction. In response to the first office action received during prosecution of the '846 patent, the applicants stated that "the outer part of the foam can be melted and three results can be obtained.... Another result is that the softened foam enters into any irregularities caused by roughness of the inside of the sheath." It is clear from this passage that the "softened" foam is melted.

■ Similarly, claim 1 of the '250 patent claims a method of making a coaxial cable that includes "relieving pressure in the foam and fusion-bonding the insulation to the inside surface of the cable sheath." Again, Trilogy's proposed claim construction, in which the fusion bonding can occur below the melting temperature of the foam, is inconsistent with the step of "relieving pressure in the foam." The specification of the '250 pat-

ent states, "[b]y melting the outer layer of foam [insulation] which is compressed against the metallic sheath, the radial compression which extends inward to the center conductor is reduced." Furthermore, the applicant stated during prosecution, "[t]he pressure [on the foam] is then partially relieved by heating the sheath so as to melt the surface of the foam.... This bonds the foam to the sheath." After examining the claims, specifications, and prosecution histories of the '846 and '250 patents, we conclude that the district court did not err in its claim construction. Properly construed, the terms "fusion-bonded" and "fusion-bonding" in the asserted claims require the foam to melt and thereby form a bond with the sheath. Thus, since it is uncontested that Times Fiber's products are not made by fusion-bonding the foam to the sheath as we have construed those terms, the district court's finding of a lack of infringement was correct as a matter of law.

## B. *Exclusion of Trilogy's Expert's Evidence*

Trilogy argues that the district court impermissibly excluded "crucial" expert testimony that supported its definition of "fusion bonding" and that as a result, it was unable to prove infringement.

Pursuant to Fed.R.Civ.P. 26(a)(2), Trilogy's expert witness submitted a report within the time period established by the district court. However, the report lacked certain information required under the rule, including the identity of exhibits to be used in summary of or in support of his opinions. The court granted Trilogy an extension of time to supplement the report with the missing information so that the report would be in compliance with the rule. Trilogy thereafter submitted a second expert's report, a rebuttal report, and an affidavit by the expert. These submissions were made after the due date for expert's reports had passed. The documents contained new opinions and information and did not merely supplement the original report. The court ruled that to the extent the supplemental reports contained new opinions not found in the original report, they should be stricken from the record. The court further ruled that the expert's affidavit which incorporated the new opinions should likewise be stricken as inadmissible.

When reviewing the application of the Federal Rules of Civil Procedure, this court generally applies the law of the applicable regional circuit, which in this case is the Fifth Circuit. *See Wexell v. Komar Indus., Inc.,* 18 F.3d 916, 919, 29 USPQ2d 2017, 2019 (Fed.Cir.1994). The Fifth Circuit in turn reviews the exclusion of expert testimony for failure to comply with a scheduling order under an abuse of discretion standard. *See Geiserman v. MacDonald,* 893 F.2d 787, 790–91 (5th Cir.1990). In determining whether the court abused its discretion in striking expert testimony from the record, the following four factors are to be considered:

(1) the importance of the excluded testimony, (2) the explanation of the party for its failure to comply with the court's order, (3) the potential prejudice that would arise from allowing the testimony, (4) the availability of a continuance to cure such prejudice.

*E.E.O.C. v. General Dynamics Corp.,* 999 F.2d 113, 115 (5th Cir.1993).

Trilogy maintains that the first factor weighs in its favor because the expert's supplemental opinions were "crucial" to Trilogy's proof of infringement. However, Trilogy concedes that the opinions in question did not relate to the accused devices, but only to the interpretation of the claim terms "fusion-bonded" and "fusion-bonding." As noted by the district court, extrinsic evidence may be relied on when needed to interpret claims, but only when it does not contradict the intrinsic record consisting of the claims themselves, the specification, and the prosecution history. *See Vitronics Corp.,* 90 F.3d at 1583, 39 USPQ2d at 1577. When, as here, the district court has concluded that the patent specification and the prosecution history adequately elucidate the proper meaning of the claims, expert testimony is not necessary and certainly not crucial.

The second factor weighs heavily against Trilogy. Trilogy contends that its delay in completing the expert's report "resulted di-

rectly from Times Fiber's obstructionist tactics." However, the opinions at issue relate to claim construction. Trilogy has not adequately explained why its expert needed information from an accused infringer in order to properly construe the claims.

Nor do the third and fourth factors assist Trilogy. When scheduling orders are violated, an opposing party is often prejudiced by the ensuing delay and resultant expense. *See Geiserman,* 893 F.2d at 792. Furthermore, grant of a continuance "would not deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders." *Id.* Even if Times Fiber would not have been prejudiced by allowing the testimony, Rule 16(b) of the Federal Rules of Civil Procedure authorizes a district court to control and expedite pretrial discovery through a scheduling order, and may prohibit a party that violates a scheduling order from introducing designated matters in evidence. *See* Fed.R.Civ.P. 16(f), 37(b)(2)(B). As stated by the Fifth Circuit, "[a]dherence to reasonable court deadlines is critical to restoring integrity in court proceedings. We will not lightly disturb a court's enforcement of those deadlines and find no reason for doing so here." *Geiserman,* 893 F.2d at 792. Similarly, we conclude that the district court did not abuse its discretion by striking from the record the expert's reports and affidavit that were submitted after the due date.

## C. The Cross–Appeal

■ In its cross-appeal, Times Fiber asks this court to review the district court's decision refusing to grant summary judgment on its motion to give collateral estoppel effect to a prior district court's determination that the asserted claims of the patents in suit were invalid and unenforceable. Although not raised by the parties, we must first address, *sua sponte,* the issue whether we have jurisdiction to hear the cross-appeal. In cases arising in whole or in part under the patent statute, this court has jurisdiction "of an appeal from a final decision of a district court of the United States." 28 U.S.C. § 1295(a) (1994). "In a case involving more than one claim, there is no final decision until a judgment is entered adjudicating all of the

claims." *See Spraytex, Inc. v. DJS & T,* 96 F.3d 1377, 1379, 40 USPQ2d 1145, 1146 (Fed. Cir.1996). However, Fed.R.Civ.P. 54(b) provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment....

■ In this case, the district court awarded judgment of non-infringement in favor of Times Fiber and dismissed Trilogy's claim for patent infringement in light of the court's claim construction. Finding "no just reason for delay of the entry of final judgment," the district court "ordered that final judgment be entered against Trilogy pursuant to Fed.R.Civ.P. 54(b) on its claim for patent infringement against the Defendants." Only claims that are finally disposed of may be certified as "final judgments" under Rule 54(b). Here, the district court fully resolved the infringement claim in the defendants' favor and certified the summary judgment of non-infringement as a final judgment pursuant to Rule 54(b). It did not render a judgment, final or otherwise, on Times Fiber's counterclaims of invalidity and unenforceability. Because the collateral estoppel motion, which was based on claims of invalidity and unenforceability, did not relate to a claim or counterclaim concerning which the district court directed judgment, we do not now have jurisdiction to review its denial. Thus, we dismiss Times Fiber's cross-appeal.

## CONCLUSION

The district court did not err in its construction of the claim terms "fusion-bonding" and "fusion-bonded" and correctly determined that no genuine issues of material fact regarding infringement were in dispute. Furthermore, the district court did not abuse its discretion by striking an expert's report and related affidavits that were submitted after the due date for such reports. Accord-

ingly, the judgment of non-infringement is affirmed. The cross-appeal is dismissed.

*AFFIRMED.*