**SAN JUAN CITY COLLEGE, INC., et al., Plaintiffs,**

v.

**UNITED STATES, Defendant.**

No. 01–73C.

United States Court of Federal Claims.

Nov. 21, 2006.

---

Hillary A. Stern, Attorney; Mark A. Melnick, Assistant Director; David M. Cohen, Director, Commercial Litigation Branch; Peter D. Keisler, Assistant Attorney General, Civil Division, Department of Justice, Washington, DC, for the defendant.

## OPINION

HORN, Judge.

### FINDINGS OF FACT

This case involves a contract dispute between San Juan City College (SJCC), its President Americo Reyes–Morales and the United States Department of Education (Department of Education). SJCC is a private, for-profit institution which, until it closed in 1996, offered vocational diploma programs primarily to low-income citizens of Puerto Rico. In 1984, SJCC began participating in a Program Participation Agreement (PPA) with the Department of Education, pursuant to "Subchapter IV–Student Assistance," of the Higher Education Act of 1965, Pub.L. No. 89–329, 79 Stat. 1219 (1965) (codified as amended, 20 U.S.C. § 1070, *et seq.* (2000)). The PPA between the parties includes the following provision:

> The Secretary may terminate this Agreement or the Institution's participation in one or more of the programs covered by this Agreement under the Student Assistance General Provisions regulations, 34 CFR Part 668, Subpart G, "Fine, Limitation, Suspension, and Termination Proceedings."

This PPA, which the parties have stipulated is a legally binding contract between the Department of Education and SJCC, was most recently renewed in May, 1993, and made available financial aid reimbursements to SJCC for students attending its schools. Specifically, SJCC participated in Federal Pell Grant Programs, which are used to credit students' accounts to pay school tuition, fees and other charges. 20 U.S.C. § 1070(a). As late as the beginning of 1995, SJCC was on the reimbursement form of payment for Title IV funds.

Yolanda R. Gallegos, Albuquerque, New Mexico, for the plaintiffs.

On or about February 8, 1995, representatives of the Puerto Rico *Departmento de*

*Hacienda,* the Puerto Rican Treasury Department (Treasury Department), conducted an inventory on SJCC campuses as a result of an alleged tax debt owed by SJCC to the Treasury Department. The Treasury Department placed locks on the doors of both SJCC's main campus and branch campus, all students were required to vacate the premises, and SJCC ceased holding classes for approximately two weeks.[1]

On February 14, 1995, Robert J. McKiernan of the federal Department of Education's Student Financial Assistance Programs sent Mr. Reyes–Morales, President of SJCC, a letter stating that the Department of Education had "been advised by the Consejo General de Educacion de Puerto Rico that San Juan City College ceased operations at all its branches effective on February 6, 1995."[2] The letter further informed the school of its regulatory responsibilities concerning its Title IV participation "[i]f an institution closes." The letter also instructed that SJCC was obligated to submit financial and performance reports within forty-five days, a letter of engagement from an independent auditor, as well as a five-year plan for record retention. The letter further stated that the school was obligated to return unexpended Title IV funds, less its administrative allowance, and instructed the school on how to provide committed funds to students who were enrolled when the institution "closed." The letter requested that SJCC inform the Department of Education, in writing, "concerning what actions you have taken or will take in this matter."

On March 3, 1995, the Department of Education issued a memorandum placing SJCC on its closed school list and ceased treating SJCC as a participating school in its Title IV programs. For the next five months, the Department of Education treated SJCC as a school that was no longer participating in the Title IV programs. According to a memo-

randum in the record, the Department of Education appears to have informed Leida Blanco of SJCC that SJCC would be required to be "reinstated" to the Title IV programs in order to resume participation. During this time, the Department of Education did not consider SJCC able to obligate or commit funds that it had not earned before its closure. The Department of Education placed a "stop order" on SJCC's reimbursement requests and did not process any reimbursement requests from SJCC from approximately mid-February, 1995 to July 10, 1995.

The record indicates that SJCC President, Mr. Reyes–Morales, received the "closed school" letter in March, 1995 and that no later than March 23, 1995 SJCC received notice that the Department of Education had placed it on the closed school list and ordered that Title IV funds not be disbursed to it. SJCC asserts that it did not receive the original February 14, 1995, letter indicating that the Department of Education considered SJCC "closed" until it requested a copy of the letter from Mr. McKiernan at the Department of Education. Meanwhile, SJCC resumed classes on February 27, 1995. As soon as SJCC representatives became aware that the Department of Education had placed SJCC on the closed school list, the school began challenging this designation. From March, 1995 to June, 1995, SJCC repeatedly informed the Department of Education orally and in writing that SJCC had never closed, but had undergone a "brief, involuntary academic recess of classes," and that it had resumed instruction.

SJCC also contacted Osvaldo Feliu Miranda, Director of the Offices for Licenses of the *Consejo General de Educacion de Puerto Rico* (Consejo), the agency that Mr. McKiernan claimed had notified the federal Department of Education of SJCC's alleged closure.[3] Mr. Miranda denied to the De-

---

1. SJCC extended the school term and all missed classes were later made up at the end of the semester.

2. The joint stipulation of facts states that Mr. Reyes–Morales indicated that the letter was sent to a home address where he no longer lived.

3. Despite having written in his letter to SJCC that he had "been advised by the Consejo General de Educacion de Puerto Rico that San Juan City College ceased operations," the record suggests that Mr. McKiernan based his decision to issue SJCC a closed school letter on the statements made to him by Felix Lugo, a Department of Education official. Mr. McKiernan stated that

partment of Education and SJCC that his office had communicated SJCC's alleged closure to the Department of Education and he informed the Department of Education that the Consejo did not consider SJCC a closed school. Specifically, Mr. Miranda stated that "the decisions of the Federal Department of Education based on information that they received from the Treasury cannot be attributed to information offered by this office." Moreover, Mr. Miranda sent an additional document to SJCC dated April 27, 1995, certifying that SJCC was a licensed college pursuant to Puerto Rico law. Mr. Miranda added that "[t]he period of time while the institution was being audited by the Secretary of Treasury does not constitute a Closing procedure under Puerto Rico Law and Regulations." The Consejo is the appropriate licensing agency in Puerto Rico.

The Department of Education maintained SJCC on its closed school list for approximately five months. During this time, SJCC made repeated attempts to inform the Department of Education that it was conducting business and requested reinstatement. The Department of Education decided to take SJCC off the closed school list and allow participation in the Title IV programs effective July 24, 1995. All known written documentation explaining the Department of Education's decision to take SJCC off the closed school list cites the fact that SJCC had only temporarily suspended classes and did not close. The Department of Education has reimbursed SJCC for all outstanding claims to Title IV funds for which the Department has determined entitlement for the period of time between February and July, 1995.

On February 13, 2001, SJCC filed an action in this court, claiming that the Department of Education had breached its PPA contract with SJCC by unilaterally ending SJCC's participation in Title IV programs without following the notice and hearing requirements found in 20 U.S.C. § 1094 (2000)

and 34 C.F.R. § 688, Subpart G (1994). According to plaintiffs, this breach "resulted in Plaintiffs suffering severe and substantial damages including, but not limited to, lost profits Plaintiffs would have earned had it not been forced by ED [the Department of Education] to close." Further, plaintiffs stated that "[s]uch damages were foreseeable to Defendants at the time they entered into the program participation agreement with SJCC."

On August 8, 2003, in response to cross-motions for summary judgment, Judge Eric G. Bruggink of the United States Court of Federal Claims dismissed plaintiffs' complaint. *San Juan City College, Inc. v. United States*, 58 Fed.Cl. 26, 32 (2003). Judge Bruggink held that even if the Department of Education had acted in an arbitrary and capricious manner as a matter of law, plaintiffs were not permitted recovery of the type of damages they sought, or traditional contract remedies. *Id.* at 30. Instead, the most plaintiffs could claim was that the Department of Education had failed to adhere to its administrative regulations under 34 C.F.R. § 668.86 (1994), thus allowing SJCC to seek an administrative appeal or equitable relief. *Id.* at 31–32. Judge Bruggink stated, "the only 'monetary' remedy would have been the restoration of payments. It follows that the parties never agreed to bind the agency to exposure to consequential damages." *Id.* at 31.

Plaintiffs subsequently appealed, and on December 9, 2004, the United States Court of Appeals for the Federal Circuit vacated the lower court's grant of summary judgment which had dismissed plaintiffs' complaint. *San Juan City College, Inc. v. United States*, 391 F.3d 1357, 1365 (Fed.Cir.2004). The Federal Circuit stated that, "[a]lthough there might be cases in which a court appropriately may dismiss a suit for breach of contract without adjudicating the merits because there is no theory of damages on which the

---

Mr. Lugo had been advised by the Consejo that SJCC had closed. Mr. Lugo apparently visited the school when it was not providing classes in February, but made no direct contact with the school or any of its faculty. Mr. Miranda stated that he had received a phone call from Mr. Lugo on February 14, 2005, requesting information

regarding whether SJCC had closed. Mr. Miranda wrote to Mr. Reyes–Morales: "On that occasion, I informed Mr. Lugo that I did not know that the institution had closed but that I would start the appropriate steps to request such information from you."

plaintiff could recover, this is not such a case." *Id.* at 1360 (citation omitted). The Federal Circuit noted that although the contract at issue covers a financial grant, SJCC is entitled to recover any damages to which it is entitled. *Id.* at 1361. The Federal Circuit subsequently raised a number of questions and remanded the case to this court to determine whether the Department of Education had breached its agreement with SJCC, and if so, to determine what damages, if any, SJCC might be entitled to recover.[4] *Id.* at 1365. The case was assigned to the undersigned judge after remand.

## DISCUSSION

This court has jurisdiction to decide this breach of contract case pursuant to the Tucker Act, 28 U.S.C. § 1491(a) (2000). The parties have filed new motions seeking summary judgment.

RCFC 56 is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ. P.) and is similar both in language and effect. Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Monon Corp. v. Stoughton Trailers, Inc.,* 239 F.3d 1253, 1257 (Fed. Cir.2001); *Avenal v. United States,* 100 F.3d 933, 936 (Fed.Cir.1996), *reh'g denied* (1997); *Creppel v. United States,* 41 F.3d 627, 630–31 (Fed.Cir.1994). A fact is material if it will make a difference in the result of a case under the governing law. Irrelevant or unnecessary factual disputes do not preclude

the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 247–48, 106 S.Ct. 2505; *see also Monon Corp. v. Stoughton Trailers, Inc.,* 239 F.3d at 1257; *Curtis v. United States,* 144 Ct.Cl. 194, 199, 168 F.Supp. 213, 216 (1958), *cert. denied,* 361 U.S. 843, 80 S.Ct. 94, 4 L.Ed.2d 81 (1959), *reh'g denied,* 361 U.S. 941, 80 S.Ct. 375, 4 L.Ed.2d 361 (1960).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence and determine the truth of the case presented, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. 2505; *see, e.g., Ford Motor Co. v. United States,* 157 F.3d 849, 854 (Fed.Cir. 1998) (the nature of a summary judgment proceeding is such that the trial judge does not make findings of fact); *Johnson v. United States,* 49 Fed.Cl. 648, 651 (2001), aff'd, 317 F.3d 1331 (Fed.Cir.2003); *Becho, Inc. v. United States,* 47 Fed.Cl. 595, 599 (2000). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250–52, 106 S.Ct. 2505; *Jay v. Sec'y of Dep't of Health and Human Servs.,* 998 F.2d 979, 982 (Fed.Cir.), *reh'g denied* and en banc suggestion declined (1993). When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Hall v. Aqua Queen Mfg., Inc.,* 93 F.3d 1548, 1553 n. 3 (Fed.Cir.1996). In such a case, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings. Summary judgment:

---

**4.** In front of Judge Bruggink, SJCC also had claimed violation of the Higher Education Act and violation of due process rights under the Fifth Amendment. However, Judge Bruggink dismissed those claims and plaintiffs subsequently abandoned them on appeal so they are not at issue in the case currently before this court. *San Juan City College, Inc. v. United States,* 391 F.3d

1357, 1360 (Fed.Cir.2004). The Federal Circuit also suggested bifurcation of the liability and damages issues. *Id.* at 1365. This opinion deals only with the issue of whether the Department of Education breached its contract and related issues, and does not deal with what damages, if any, plaintiffs might be entitled to recover.

saves the expense and time of a full trial when it is unnecessary. When the material facts are adequately developed in the motion papers, a full trial is useless. "Useless" in this context means that more evidence than is already available in connection with the motion for summary judgment could not reasonably be expected to change the result.

*Dehne v. United States,* 23 Cl.Ct. 606, 614–15 (1991) (citing *Pure Gold, Inc. v. Syntex, Inc.,* 739 F.2d 624, 626 (Fed.Cir.1984)), *vacated on other grounds,* 970 F.2d 890 (Fed.Cir.1992); *see also U.S. Steel Corp. v. Vasco Metals Corp.,* 55 C.C.P.A. 1141, 394 F.2d 1009, 1011 (1968).

Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. 2505; *Eli Lilly & Co. v. Barr Labs., Inc.,* 251 F.3d 955, 971 (Fed.Cir.2001), *cert. denied,* 534 U.S. 1109, 122 S.Ct. 913, 151 L.Ed.2d 879 (2002); *Gen. Elec. Co. v. Nintendo Co.,* 179 F.3d 1350, 1353 (Fed.Cir. 1999). In other words, if the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. at 587–88, 106 S.Ct. 1348; *Monon Corp. v. Stoughton Trailers, Inc.,* 239 F.3d at 1257; *Wanlass v. Fedders Corp.,* 145 F.3d 1461, 1463 (Fed.Cir.), *reh'g denied and en banc suggestion declined* (1998).

The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc.,* 109 F.3d 739, 741 (Fed.Cir.) (quoting *Conroy v. Reebok Int'l, Ltd.,* 14 F.3d 1570, 1575 (Fed.Cir.1994)), *reh'g denied and en banc suggestion declined* (1997); *Lockwood v. Am. Airlines, Inc.,* 107 F.3d 1565, 1569 (Fed.Cir.1997). If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that a genuine dispute regarding a material fact exists by presenting evidence which establishes the existence of an element essential to its case upon which it bears the burden of proof. *See Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. 2548; *Am. Airlines, Inc. v. United States,* 204 F.3d 1103, 1108 (Fed.Cir.2000); *see also Schoell v. Regal Marine Indus., Inc.,* 247 F.3d 1202, 1207 (Fed.Cir.2001).

After reviewing the parties' submissions, the court finds that there are no material facts in dispute. Therefore, consideration on cross-motions for summary judgment is appropriate. Moreover, this case involves two separate sets of SJCC and Department of Education actions, with separate regulatory provisions governing each. Accordingly, the court reviews SJCC's claims related to its PPA and to its SJCC's program eligibility under the regulations separately.

*Program Participation Agreement*

■ SJCC claims that the Department of Education terminated its Program Participation Agreement without a hearing in violation of the applicable Title IV statutory provisions and implementing regulations. SJCC further claims that the statutory provisions and implementing regulations were incorporated into its PPA so that the PPA required a hearing for such a termination.[5] The Department of Education, however, could not have terminated SJCC's agreement because pursuant to the terms of the PPA, specifically Article X, paragraph 2(a), and the regulations governing PPAs, specifically 34 C.F.R. §§ 668.14 and 668.26, the PPA with SJCC

---

5. The parties dispute whether this court should apply a de novo or arbitrary and capricious standard of review to the SJCC's challenge to the federal Department of Education's application and interpretation of its own regulations as in-

corporated into a contract with a private party. The court does not need to decide which standard of review applies, because SJCC's arguments fail even under a de novo standard of review.

automatically expired when SJCC's doors were closed and locked by the Puerto Rican Treasury Department, students were ordered to vacate the premises, and no classes were held for approximately two weeks. Moreover, even if the Department of Education had terminated SJCC's PPA, the Department of Education was not required to provide SJCC a Subpart G hearing because SJCC never requested one.[6]

The Department of Education could not have terminated SJCC's agreement because SJCC's closure caused the PPA with SJCC to automatically expire. According to the Title IV regulations:

(a) An institution's participation in a Title IV, HEA [Higher Education Act] program ends on the date that—

(1) The institution closes or stops providing educational programs for a reason other than a normal vacation period or a natural disaster that directly affects the institution or the institution's students.

34 C.F.R. § 668.26(a) & (a)(1) (1994). SJCC's closure was not for a normal vacation period, nor was the closure caused by a natural disaster. SJCC claims that the Department of Education's classification of its institution as closed was inappropriate because the Treasury Department's audit period "does not constitute a Closing procedure under Puerto Rico Law and Regulations." In this breach of contract claim, however, this court need only look to the terms of the contract between the parties and the applicable United States laws and regulations incorporated therein. Under the plain language of the regulations governing this contract, SJCC "stopped providing educational programs" when the school was closed for more than two weeks (complete with locks placed on the doors) by the Puerto Rican Treasury Department as part of their tax investigation. Whether the school closed permanently or not is not relevant to this decision.

Under the applicable federal regulations, a school's closure for a reason other than vacation or natural disaster triggers an automatic expiration of the school's PPA with the De-

partment of Education. Title IV regulations governing PPAs provide:

(g)(1) Except as provided in paragraphs (h) and (i) of this section, the Secretary terminates a program participation agreement through the proceedings in subpart G of this part.

(h) An institution's program participation agreement automatically *expires* on the date that—

(2) The institution's participation ends under the provisions of § 668.26(a)(1), (2), (4), or (7).

34 C.F.R. § 668.14(g)(1), (h), & (h)(2) (1994) (emphasis added). Therefore, when SJCC's closure caused its PPA to automatically expire on the date of closing, SJCC no longer had an active PPA for the Department of Education to terminate or suspend through procedures of any sort, including notice or hearing procedures.

In fact, SJCC's failure to notify the Department of Education of its closure is the only clear regulatory violation in this case. Under the Title IV regulations, SJCC was required to notify the Department of Education that it had stopped providing education programs due to actions taken as part of the Puerto Rican Treasury Department's tax investigation. 34 C.F.R. § 668.26(b)(1). According to the regulations governing SJCC's Title IV program participation eligibility:

(b) If an institution's participation in a Title IV, HEA program ends, the institution shall—

(1) Immediately notify the Secretary of that fact;

(2) Submit to the Secretary within 45 days after the date that the participation ends—

(i) All financial, performance, and other reports required by appropriate Title IV, HEA program regulations; and

(ii) A letter of engagement for an independent audit of all funds that the institution received under that program,

---

**6.** SJCC has never alleged in the record before this court that it requested a hearing from the Department of Education.

the report of which shall be submitted to the Secretary within 45 days after the date of the engagement letter. 34 C.F.R. § 668.26(b) & (b)(1)-(2). However, the SJCC did not notify the Secretary of its closure by the Puerto Rican Treasury Department and the federal Department of Education found out about the school's cessation of programs from other sources.[7] As soon as the Department of Education discovered the school's closure, it wrote to SJCC to remind the institution of its obligations under 34 C.F.R. § 668.26.

Had SJCC notified the Department of Education of the nature of its closure in compliance with the regulations, SJCC might have been able to accomplish a smoother and quicker transition. Without clear and prompt communication from participating schools, it is reasonable that the Department of Education would not, upon receiving news of a school's closure, assume that a school will reopen in the near future. Such an assumption could occasion the Department of Education to continue inappropriate payments of taxpayer funds to closed schools, with little opportunity for recovering those lost funds.

The Department of Education's decision to reimburse SJCC for outstanding claims to Title IV funds for the period February to July, 1995, and to reinstate SJCC's funding, without requiring the school to apply for a new PPA, may not have been perfectly congruent with the regulatory structure. The detailed regulatory procedures contemplate "termination" procedures in the usual circumstances to end a PPA, not automatic expiration of a school's PPA contract in the case of a school which reopens relatively soon after having its doors involuntarily locked and closed to students, as here.

According to the regulations governing reinstatement of participation, an institution "whose participation in the Title IV, HEA program has been terminated may file a request for reinstatement of that participation." 34 C.F.R. § 668.96(a)(1) (1994). That request must be in writing. 34 C.F.R. § 668.96(c)(3). Moreover, "[i]n the case of an institution," the institution must "enter into a new program participation agreement with the Secretary." 34 C.F.R. § 668.96(c)(3). SJCC should not be able to claim damages for Department of Education action to provide the school with funding sooner than it would have otherwise received such monies had the Department followed the regular termination procedures, which would have forced SJCC to wait at least eighteen months beyond termination before reinstatement. 34 C.F.R. § 668.96(b)(1). In any event, "termination" procedures are not called for when the PPA automatically expires with the closing and locking of a school's doors.

SJCC also claims that the Department of Education was contractually bound to provide a hearing, both under the Title IV statute and the Title IV implementing regulations. However, neither the statute nor the regulations support this claim. Even if the Department of Education had terminated SJCC's Program Participation Agreement, which it did not, the SJCC was not entitled to a hearing because it never requested one.

In Article X, paragraph 2, section (a), the PPA separately contemplates an end to the agreement without the action of either party, "[o]n the date the institution no longer qualifies as an eligible institution." Further, as noted above, the "termination"[8] provision of Article X of the Program Participation Agreement also incorporated implementing regulations Subpart G and limited the Secretary's ability to terminate the PPA as follows:

The Secretary may terminate this Agreement or the Institution's participation in one or more of the programs

---

7. While the parties are unclear about who informed the Department of Education of SJCC's closure, the material fact is that SJCC did cease operations for more than two weeks because of the Puerto Rican Treasury Department's tax investigation and action to lock the school's doors and force students to leave. The parties do not dispute this fact.

8. The term "termination" appears to be used in its common usage in the PPA, whereas the regulations deliberately have used the terms "expire" and "termination" to connote more precise concepts.

covered by this Agreement under the Student Assistance General Provisions regulations, 34 CFR Part 668, Subpart G, "Fine, Limitation, Suspension, and Termination Proceedings."

SJCC cites 20 U.S.C. § 1094(b) in support of its claim for entitlement to a hearing. This statute reads as follows:

> (b) Hearings.
>
> (1) An institution that has received written notice of a final audit or program review determination and that desires to have such determination reviewed by the Secretary shall submit to the Secretary a written request for review not later than 45 days after receipt of notification of the final audit or program review determination.
>
> (2) The Secretary shall, upon receipt of written notice under paragraph (1), arrange for a hearing and notify the institution within 30 days of receipt of such notice the date, time, and place of such hearing. Such hearing shall take place not later than 120 days from the date upon which the Secretary notifies the institution.

20 U.S.C. § 1094(b). This statute only requires a hearing upon the institution's submission of a written request for review within forty-five days of receiving notice of the Department of Education's determination regarding its status. 20 U.S.C. § 1094(b)(1).

The parties dispute the sufficiency of the notice the Department of Education provided SJCC that it considered SJCC to be a "closed school," because the Department of Education sent the letter to SJCC president Mr. Reyes–Morales' apparently expired home address.[9] It is clear from the record that SJCC and Mr. Reyes–Morales ultimately did receive the Department of Education's notice sometime in March, 1995 and, as of the commencement of this case in February, 2001, SJCC still had not requested a hearing. Instead, SJCC engaged in informal oral and written discussions with the Department of Education about the school's status. Therefore, regardless of whether the exact date that SJCC received written notice of the Department of Education's determination was in February or March of 1995, SJCC did not submit the statutorily required written request for a hearing within forty-five days of any possible notice of a Department of Education determination. Until SJCC made a request for a hearing, the Department of Education was not obligated to offer SJCC a formal hearing under the Title IV statute. If this court were to hold otherwise and to require the Department of Education to hold a statutorily required hearing based on informal communications, rather than the statutorily required, formal, written request, the court would subject the Department of Education to a level of unwise, possible administrative confusion, which is inappropriate in the presence of clear statutory and regulatory language.

For similar reasons, the Department of Education was not required to hold a termination hearing for SJCC under the contractually incorporated regulations, "Subpart G—Fine, Limitation, Suspension and Terminations Proceedings." Moreover, while these regulations were unquestionably incorporated into the Program Participation Agreement between the parties, the regulations governing hearing requirements in the face of a "termination" also are not applicable, simply because there was no termination. As discussed above, the PPA between SJCC and the Department of Education expired when the Puerto Rican Treasury Department locked the school's doors.

In the event that the Department of Education decides to terminate an institution's PPA, Subpart G requires that the government send notice of such a determination to the institution, specifying a proposed termination effective date no less than twenty days

---

9. According to Mr. Reyes–Morales, the Department of Education mailed its notice to SJCC President Mr. Reyes–Morales' old home address. Presumably, the Department of Education did so because SJCC could not receive mail when its doors were barred and locked by the Puerto Rican Treasury Department and Mr. Reyes–Mor- ales' address, which he apparently had not updated, was the only other address it had on file. There is no explanation in the record. However, the actual reason is not relevant to this court's decision, because SJCC ultimately did receive notice of the Department of Education's determination and still did not request a hearing.

following the date the Department of Education mails the notice. 34 C.F.R. § 668.86(b)(1)(i), (ii). The participating institution then has until that proposed effective date to send the Department of Education "a request for a hearing or written material indicating why the limitation or termination should not take place." 34 C.F.R. § 668.86(b)(1)(iii). If the institution elects to submit written material, rather than request a formal hearing, the Department of Education need only consider that material and then notify the institution that: "(i) The proposed action is dismissed; (ii) Limitations are effective as of a specified date; or (iii) The termination is effective as of a specified date." 34 C.F.R. § 668.86(b)(2).

In the case before this court, the Department of Education's letter to SJCC did not propose a termination effective date because the Department of Education was treating SJCC's Program Participation Agreement as automatically expired under the "closed school" regulations. Regardless, SJCC responded orally and by submitting written materials. In fact, SJCC never alleges that it requested a hearing before filing this action. The Subpart G regulations did not require the Department of Education unilaterally to provide SJCC a hearing under the facts of this case. Based on the record before the court, the Department of Education did not breach its contract with SJCC.

*Title IV Eligibility*

■ A separate issue in this case is whether the Department of Education acted appropriately when it placed SJCC on the "closed school list" of those ineligible to participate in Title IV programs, and effectively determined that SJCC was generally ineligible for Title IV program participation. SJCC claims that such an ineligibility determination should have been accomplished only with notice and a hearing. When the Department of Education discovered that SJCC had been closed and had stopped providing education programs, the Department of Education considered SJCC ineligible for Title IV funding. The placement of an institution on the closed school list is governed by "Subpart D–Loss of Eligibility." 34 C.F.R. § 600.40, *et seq.* (1994). The regulations provide that an in-

stitution loses its eligibility to participate in Title IV funding programs on the date that "[t]he institution or location ceases to provide educational programs for a reason other than a normal vacation period or a natural disaster that directly affects the institution, particular location, or the students of the institution or location." 34 C.F.R. § 600.40(a)(1)(iii). These regulations further state that if the Department of Education believes an institution is no longer eligible for Title IV participation, the Secretary may:

> (1) Terminate the institution's eligibility designation in whole or as to a particular location—
>
>> (i) Under the procedural provisions applicable to terminations contained in 34 CFR 668.81, 668.83, 668.86, 668.87, 668.88, 668.89, 668.90(a)(1), (a)(4), and (c) through (f), and 668.91; or
>>
>> (ii) Under a show-cause hearing, if the institution's loss of eligibility results from—
>>
>> . . .
>>
>> (G) Its ceasing to provide educational programs for a reason other than a normal vacation period or a natural disaster that directly affects the institution, a particular location, or the students of the institution or location.

34 C.F.R. § 600.41(a)(1)(i), (ii)(G).

Although it is clear that SJCC ceased to provide educational programs for a reason other than "a normal vacation period or a natural disaster," the question of whether the Department of Education followed the necessary procedures related to SJCC's Title IV eligibility is outside of this court's purview, as the question is one of administrative law. This court does not have jurisdiction over claims for relief pursuant to the APA. *See Samish Indian Nation v. United States,* 419 F.3d 1355, 1373 (Fed.Cir.2005); *Lion Raisins, Inc. v. United States,* 416 F.3d 1356, 1370 n. 11 (Fed.Cir.2005); *Martinez v. United States,* 333 F.3d 1295, 1313 (Fed.Cir.2003) ("[T]he Court of Federal Claims lacks APA jurisdiction ...." (citing *Murphy v. United States,* 993 F.2d 871, 874 (Fed.Cir.1993), *cert. denied,* 511 U.S. 1019, 114 S.Ct. 1402, 128 L.Ed.2d 75, *reh'g denied,* 511 U.S. 1118, 114 S.Ct. 2123, 128 L.Ed.2d 681 (1994))), *cert.*

*denied,* 540 U.S. 1177, 124 S.Ct. 1404, 158 L.Ed.2d 76 (2004); *Crocker v. United States,* 125 F.3d 1475, 1476 (Fed.Cir.1997). This court only has subject matter jurisdiction over this case to the extent that SJCC claims a breach of its PPA contract. The Department of Education entered into the PPA with SJCC only after the institution's eligibility to participate in Title IV programs had been established. The PPA did not create or determine eligibility for Title IV funding. This court, therefore, is without jurisdiction over those claims that SJCC makes related to the Department of Education's February, 1995 placement of SJCC on the "closed school list."

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is, hereby, **GRANTED.** The clerk's office shall **DISMISS** plaintiffs' complaint, with prejudice. Each party shall bear its own costs.

**IT IS SO ORDERED.**